Mr. Justice Robb
delivered the opinion of the Court:
This appeal is from concurrent decisions of the Patent Office tribunals in an interference proceeding in which priority of invention was awarded to appellee, George H. Hayes.
The invention comprises an improvement in the pneumatic «drill known as the “Little Giant,” patented by one Kimman. *171 In the Little Giant drill there are four power cylinders arranged in pairs, the cylinders of each pair being one above the other, and the two pairs being placed at right angles to each other. The cylinder pistons act upon the common crank shaft which drives the tool. Two cylinder valves arranged parallel with the pairs of cylinders supply air under pressure to the admission ports of the cylinder. In the present invention the cylinder valves of the Little Giant motor have been displaced by cylindrically oscillating valves, as will appear from the following counts, which disclose the nature of the invention set forth in the eight counts of the issue:
“1. A portable pneumatic motor comprising a plurality of sets of power cylinders, arranged at an angle to each other, pistons in said cylinders, a crank shaft with which the said pistons are connected, the cylinders of each set being parallel with each other, and having their central axes in a plane which is radial with respect to the axis of the crank shaft, valves for said cylinders, embracing rotative valve plugs, the central axis of which are parallel with the axis of the crank shaft, and each of which is common to all of the cylinders of one set of cylinders, ■and operative connections between the crank shaft and said valve plugs for actuating the latter.”
“é. A portable pneumatic motor comprising a casing provided with a plurality of sets of power cylinders, pistons in said ■cylinders, and a crank shaft with which said pistons are connected, the cylinders of the several sets having their central axes in planes which are radial with respect to the axis of the • crank shaft, and are at an angle to each other, said casing being also provided between the outer ends of the cylinders, with a supply chamber for the pressure fluid, located between the outer •ends of said cylinder, and also having, between said supply • chamber and the cylinders, cylindric valve chambers, the central axis of which are at right angles to the axis of the cylinders, .and parallel with the crank shaft, rotative valve plugs located •in said chambers, said valve plugs each having a plurality of sets of valve ports or passages, one for each of the cylinders .associated therewith, and the valve casings having ports or pas *172 sages leading from the said supply chamber to the said valve chambers, and connections between the crank shaft and the said valve plugs for giving motion to the latter.”
“7. A portable pneumatic motor comprising a crank shaft, a power cylinder, a valve for controlling the admission of pressure fluid to and its exit from said cylinder, said valve embracing a rotative valve plug the exis of which is at right angles to the central axis of the cylinder, and parallel with the crank shaft, an admission port in said valve plug through which pressure fluid is admitted to the outer end of the cylinder, and an exhaust port in said plug, connected with an exhaust passage which extends longitudinally through the plug, and opens through one end of the same.”
Hayes filed an application December 4, 1902, the claims'of which are directed to a reversing mechanism. A patent was granted upon this application July 21, 1903. On September 21, 1903, Eeinhold A. Norling filed Us application containing the counts of the issue, and a patent was granted to him on June 21, 1904. This patent coming to the notice of Hayes, he, on August 2, 1906, filed a reissue application embodying the claims of the Norling patent, and without in any way changing the illustration and description of the original Hayes application. An interference was thereupon declared, when Nor-ling filed a motion that it be dissolved as to claims 3, 4, and 6, the grounds of the motion being in substance that those counts, when read in the light of Hayes’s specification, are unpatentable over the prior art; that there is no basis in Hayes’s original specification for count 6. The Examiner overruled Nor ling’s: contention as to count 6, but sustained it as to counts 3 and 4. The Examiner also dissolved the interference as to counts. 1, 2, 5, and 8 upon the same ground, although the question had not been raised by Norling’s motion. Upon appeal to the Examiners-in-Chief, the decision of the Examiner as to counts. 1, 2, 3, 4, 5, and 8 was reversed, and those counts were held patentable to Hayes. The case then went to the Examiner-of-Interferences, who, in an exhaustive opinion, reviewed the evidence and awarded priority of invention to Hayes. He founds *173 that while Norling was the first to conceive the subject-matter of all the counts save one (count 7), he was the last to reduce to practice, and that there was a lack of diligence on his part at and subsequent to the time of the entry of Hayes into the field. He expressed the opinion that “notwithstanding Hayes has established priority of invention, the evidence apparently shows a clear case of intervening rights on the part of Nor-ling,” and “that the Hayes reissue should be refused notwithstanding his earlier invention of the subject-matter.” Upon appeal, the Examiners-in-Chief, after a thorough and careful review of the case, affirmed the decision of the Examiner of Interferences on the question of priority, and upon the question of statutory bar said: “The existence of a statutory bar has nothing to do' with the question of priority, and the Examiner of Interferences has called the Commissioner’s attention to the matter under rule 126. Consideration of the point by us is therefore unnecessary.” An appeal was taken to the Commissioner, who again reviewed the evidence, and in a well-considered opinion awarded priority of invention to Hayes, saying that the question whether “a statutory bar of intervening rights exists against the granting of a reissue patent to Hayes” is subsidiary to the question of priority of invention, and “will be deferred until the final determination of this interference.”
1. We agree with the Patent Office “that Hayes is entitled to make all of the counts, he having disclosed an air chamber and valves with ports and passages within the fair and natural meaning of those terms, and only differing in degree rather than substance from those disclosed by Norling.”
2. Norling’s assignee and employer is the Aurora Automatic Machinery Company of Aurora, Illinois. Hayes assigned his invention to his employer, the Chicago Pneumatic Tool Company of Chicago, Illinois, that company being the successor of the Standard Pneumatic Tool Company of the same place. The Aurora Company, from some time prior to 1901 to about March, 1902, manufactured Little Griant drills for the Standard Pneumatic Tool Company, in whose employ was Kimm an, the patentee. We do not deem it necessary to review in. detail *174 the evidence before us, for that has been satisfactorily done by . the Patent Office. It is sufficient to state that, accepting appellant’s evidence at its face value, he was in full possession of this invention as early as August, 1901. Indeed, his principal witness, Levedahl, who was at one time president and chief mechanical engineer of the Aurora Company, testifies that he could then have constructed a machine embodying the invention from the disclosure made to him by Norling. Levedahl further testifies that he then considered the invention a valuable improvement over the prior art. Shortly thereafter the Aurora Company arranged for the construction of bicycle motors, and intentionally sidetracked Norling’s invention, although Nor-ling was by contract bound to assign his inventions to the company, or at least give the company the first opportunity to pur_ehase them. There was evidence that it was suggested to Nor-ling that he attempt to interest others in his invention. He, however, did nothing of the kind, but devoted his time to other matters.
The evidence clearly shows that Hayes conceived the invention embodied in all the counts save count 7 in March 1902,. and that he conceived the invention set forth in count 7 in May of the same year. His application, as previously stated, was filed on December 4th, following. Early in August, 1902,. Hayes went to Europe, to take charge of work there for his-company, and within six weeks from the time he landed, he not only had made drawings for the making of his first drill, but had actually constructed and tested a drill. He made a second drill in London about the middle of October, 1902, which he sent to America about the 1st of December, following. The evidence conclusively shows that this drill was taken to Chicago on December 15, 1902, where it was inspected by Kimman, the patentee of the Little Griant drill. On the day following this inspection, Kimman called at the Aurora Company’s plant, and there saw Levedahl, to whom he disclosed the invention. Levedahl admits this interview, saying “Mr. Kimman called on us in the fall of 1902; I think, in the latter part of November or.in December ; I couldn’t- place the date exactly; and he told me that *175 Mr. Hayes had made a drill, which he explained somewhat. I remember particularly that he explained the position of the-valves, the valves being oscillating and placed inside of the-sector formed by the two cylinders and the body of the drill. From what little explanation Mr. Kimman gave, I gathered the idea that the valves were placed somewhat in the same position as Mr. Norling had placed them in his invention; and I mentioned then that we had had a design in the shop for sometime of that kind. I think Mr. Kimman told me that this drill was made in London or in England, at least, by Mr. Hayes, and that he had heard very favorable reports of the same, and that the drill was going to come here.” Levedahl further says that he then informed Kimman of the Norling invention, but in this-he is contradicted by Kimman. It is significant that Norling was then instructed to proceed with the preparation of working drawings for the manufacture of the new drill. These drawings were not completed until May, 1903.
A clearer case of inexcusable delay would, in our opinion, be-difficult to find. Accepting Norling’s testimony, he was in a position in August, 1901, either to file an application or to reduce his invention to practice by actually constructing a drill; and yet between that time and January, 1903, he did practically nothing. The two new drawings were unnecessary, and their preparation required very little time. Moreover, eight months-were consumed in the preparation of the application after Levedahl instructed Norling to proceed. In view of the comparative simplicity of the invention, this was an unreasonable time. We fully concur with the finding of the Patent Office of a lack of diligence on the part of Norling.
3. While the question of intervening rights, so-called, was-not directly raised in the original motion to dissolve the interference, it is apparent from the record that it was pressed before-the tribunals of the Patent Office, and we will therefore consider the question as raised.
Upon the argument of the case at bar, leave was sought and obtained to file additional briefs directed to this question, owing to the decision of the court in Skinner v. Carpenter, 36- *176 App. D. C. 178. In that case Carpenter was a reissue applicant. Skinner’s application had been filed between the filing of Carpenter’s original and reissue applications. Priority of invention was awarded Carpenter. Upon appeal to this court, the question of intervening rights having been raised below, and relied upon here, we ruled (Carpenter not being represented) "that, in the circumstances of the case, Carpenter was not entitled to a reissue of his patent, and reversed the decision of the Commissioner. ' We did not, however, award priority of invention to Skinner. Theretofore, when it was apparent that neither party was really entitled to a patent, we had contented •ourselves with the mere intimation to that effect. Kreag v. Geen, 28 App. D. C. 487. As the question is an important-one, and as our decision in the Carpenter Case was rendered without both parties being represented, and as little time has intervened since the rendition of that decision, we will con.sider the matter de novo.
Under sec. 4904, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3389) the Commissioner is authorized to declare an interference between pending applications, or between a pending application and an unexpired patent, and to “direct the Primary Examiner (now the Examiner of Interferences) to proceed to determine the question of priority of inventionThe Commissioner is authorized to “issue a patent to the party who is adjudged the prior inventor,” unless an appeal is taken, as the law provides. Under the act of February 9, 1893 (27 Stat. at L. 434, chap. 74), “any party aggrieved by a decision of the Commissioner of Patents in- any interference ease may appeal therefrom” to this court. Our jurisdiction in interference cases is solely dependent upon this statute. What is the extent of the jurisdiction there conferred ?
Prior to Podlesak v. McInnerney, 26 App. D. C. 405, this •court declined, except where very unusual circumstances existed, to consider the right of either party to make the claims of the issue. In that case, however, after careful consideration, the court modified its earlier views, and ruled that, inasmuch as the right of a party to make a claim goes to the foundation *177 of the interference, and determines the question of priority in favor of the other party, it would consider' the question.
In Allen v. United States, 26 App. D. C. 8, this court, after investigation, ruled that interferences are “instituted for the purpose of deciding the question of priority of invention, and for no other purpose.” This case went to the Supreme Court, (203 U. S. 476, 51 L. ed. 281, 27 Sup. Ct. Rep. 141), where it was said: “The statute is explicit. It limits the declaration of interferences to the question of priority of invention. Section 4904 provides that in case of conflict of an application for a patent with a pending application or with an unexpired patent (as in the case at bar), the Commissioner shall give notice thereof, ‘and shall direct the primary examiner to proceed to determine the question of priority of invention.’ * * * We concur with the views expressed [in this court], that the statutes provide only for appeals upon the question of priority of invention. Appeals on other questions are left to the regulation of the Patent Office, under the grant of power contained in sec. 483 (U. S. Comp. Stat. 1901, p. 272).”
In the case of Re Fullagar, 32 App. D. C. 222, it was held that our jurisdiction to entertain appeals from the Commissioner of Patents is limited to two classes of cases: First, where the claims of an application for a patent or the reissue 'of a patent, after having been twice rejected, have been finally rejected on appeal to the Commissioner; and, second, where, on an appeal to the Commissioner in an interference proceeding, there has been a final decision of priority in favor of one of the parties thereto.
In Burson v. Vogel, 29 App. D. C. 388, the question of Bur-son’s right to a patent because of the statutory bar of public use was raised, but this court declined to consider it, saying: “The question is one for the consideration of the Commissioner on the final allowance of the patent.”
In Gueniffet v. Wictorsohn, 30 App. D. C. 432, the court said: “It is unnecessary to determine what right either of the parties ultimately may have to a patent under their pending applications,” the only question involved being that of priority *178 of invention. This ruling was followed in Lecroix v. Tyberg, 33 App. D. C. 586.
The distinction between the situation in the Podlesak Case and that in- the present case is apparent. In the former, if one of the parties had no right to make the claims of the issue, that is, if his application did not disclose the invention, and the application of his adversary did disclose it, the finding of that fact necessarily resulted in an award of priority. In the present case, a finding that a patent ought not to be issued to Hayes, notwithstanding he is the prior inventor, in no way affects the sole question involved in the interference, namely, the question of priority; in other words, such a finding would not entitle Norling to an award of priority. Had the Commissioner ruled that the structure of each applicant contained patentable features, and that there was no interference in fact, and we had sustained the latter ruling, could it be maintained that either party would have the right, as against the other, to urge the bar of public use? Manifestly not. We see no distinction in principle between the supposed case and the case before us. Again, if the Commissioner ultimately decides to grant the application of Hayes for the reissue of his patent, no appeal will lie to this court from that decision; and yet appellant asks us to decide this very question, upon the ground that its determination is necessary to a decision of the question of priority of invention. It should be remembered that this is not an infringement suit, but a proceeding under a statute which provides for the determination of a single issue,—that of priority of invention.
We conclude, therefore, that we are without jurisdiction in this proceeding to pass upon the question suggested.
Decision of the Commissioner affirmed. The clerk will certify this opinion as by law required. Affirmed.